| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00207-JAW |
| | ) | |
| TONY WOODARD | ) | |

## SENTENCING ORDER

The Court concludes that the Defendant's prior state convictions of violating a condition of release and failure to report are distinct from contempt of court and are therefore countable in his criminal history calculation under United States Sentencing Guideline sections 4A1.1(c) and 4A1.2(c)(1).

## I. STATEMENT OF FACTS

### A. Procedural Background

On February 29, 2012, Tony Woodard entered a guilty plea to Count I of the indictment charging him with distributing Oxycodone in violation of 21 U.S.C. § 841(a)(1). *Indictment* (ECF No. 1). The Probation Office prepared a Presentence Investigation Report (PSR) and included as part of Mr. Woodard's criminal history under the United States Sentencing Guidelines (U.S.S.G.) two 2004 convictions: one for violating a condition of release and another for failure to report. *Presentence Investigation Report (PSR)* ¶¶ 32-33. The Probation Office assigned one criminal history point to each conviction. *Id.*

Mr. Woodard disputed the inclusion of these two convictions in his criminal history computation and on July 25, 2012, he filed a memorandum opposing their

inclusion.  *PSR ¶¶ 32, 33; Def.'s Sentencing Mem.* (ECF No. 32) (*Def.'s Mem.*).  On August 17, 2012, the Government filed its sentencing memorandum.  *Government's Mem. in Aid of Sentencing* (ECF No. 33) (*Gov't's Mem.*).

### B.  Tony Woodard's Criminal History and the Guideline Calculation

On November 16, 2004, Mr. Woodard pleaded guilty in Maine District Court to violating a condition of his release and received a sentence of seven days imprisonment, which ran concurrently with a conviction for operating while license suspended or revoked.  *PSR ¶ 32.*  According to the PSR, Mr. Woodard was on bail for an operating after suspension conviction, which contained a condition that he not operate a motor vehicle.  *Id.*  The Probation Office assessed one criminal history point under U.S.S.G. § 4A1.1(c).

On May 2, 2006, Mr. Woodard pleaded guilty in Maine District Court to failing to report and received a $200 fine.  *PSR ¶ 33.*  Mr. Woodard did not present himself to the jail as ordered.  *Id.*  He had previously signed a bail bond agreeing to turn himself in to serve any imposed sentence related to that charge.  *Id.*  The Probation Office assessed one criminal history point under U.S.S.G. § 4A1.1(c).

Mr. Woodard has no other countable convictions and two criminal history points, which results in a Criminal History Category II.  U.S.S.G. § 5A.  With a total offense level of 25 and a Criminal History Category II, Mr. Woodard faces a Guideline sentence range of 63 to 78 months.  *Id.*  If either or both of these convictions were not counted, his Criminal History Category would be reduced to I and his Guideline range would drop to 57 to 71 months.  *See id.*

## II.    THE PARTIES' POSITIONS

### A.    Tony Woodard's Memorandum

Mr. Woodard argues that the convictions should not count because they are similar to contempt of court.[1] *Def.'s Mem.* at 5.  He relies on two First Circuit cases: *United States v. Unger*, 915 F.2d 759 (1st Cir. 1990) and *United States v. Spaulding*, 339 F.3d 20 (1st Cir. 2003).  He says that *Spaulding-Unger* requires the trial court to first determine "whether an offense runs afoul of section 4A1.2(c)(2)," *Unger*, 915 F.2d at 762-63, and to determine the scope of § 4A1.2(c)(2), the court "looks to the substance of the underlying state offense in order to determine whether it falls within the proscription." *Def.'s Mot.* at 1 (quoting *Unger*, 915 F.2d at 763).  Next, the Court assesses the "relative danger posed by each." *Id.* (quoting *Spaulding*, 339 F.3d at 22).  Finally, the Court takes into account the "risk of recidivism." *Id.* at 4-5 (citing *Spaulding*, 339 F.3d at 22).

#### 1.    Violation of Condition of Release

Applying *Spaulding-Unger*'s first factor to violation of condition of release, Mr. Woodard contends that the substance of this offense is similar to contempt of court because the statutory elements of the two offenses are analogous.  *Id.* at 2. Although he concedes that, unlike with violation of condition of release, federal courts often imply a mens rea requirement into the elements of contempt of court, Mr. Woodard argues that the "just cause" affirmative defense for violation of condition of release demonstrates that "neither a federal contemnor nor a person

---

[1]    In Mr. Woodard's Sentencing Memorandum he noted that he initially objected that the two convictions—violation of condition of release and failure to report—were "uncounseled and not countable under the guidelines;" however, he is "not pursuing this objection." *Def.'s Mem.* at 1 n.2.

charged with [violating a condition of release] under state law is subject to conviction for conduct that would be neither willful nor the product of just cause." *Id*. at 2-3. Further, even though the penalties are different, he asserts that the procedure applicable to both crimes is similar. *Id.*

Next, applying the second *Spaulding-Unger* consideration, Mr. Woodard maintains that it is difficult to determine the relative danger posed by both violation of condition of release and contempt of court because the dangerousness of each depends on the facts in any case. *Id*. at 3-4.

With respect to the third factor, Mr. Woodard argues that because the Court may only consider certain materials under the categorical approach outlined in *United States v. Miller*, 478 F.3d 48, 51 (1st Cir. 2007), it is too difficult for the Court to predict the risk of recidivism of defendants who violate their conditions of release as compared to defendants who engage in contempt of court. *Id*. at 4-5.

After analyzing the three considerations, Mr. Woodard argues that "the similarities between the [violation of condition of release offense] at issue here and contempt of court militate in favor of a 'similar to' finding under § 4A1.2(c)(1)." *Id*. at 5.

### 2. Failure to Report

Applying *Spaulding-Unger*'s first factor—the substance of the offense—to the failure to report conviction, Mr. Woodard asserts that failure to report and contempt of court are similar because failure to report is not expressly a strict liability crime and its "just cause" affirmative defense essentially implies a mens rea requirement.

*Id.* He cites 17-A M.R.S. § 34(4) and argues that under the Maine statute if a crime is not specifically designated as a strict liability crime absent evidence of legislative intent, "criminal intent must be presumed." *Id.* at 6. "That being the case," he explains, "there is no mens rea distinction between [ ] [failure to report] and federal criminal contempt in the statutory language of the two offenses." *Id.* Mr. Woodard acknowledges that the penalties for the two crimes are distinct but states that these differences "do not otherwise overcome the similarities between the statutes." *Id.*

As with his violation of condition of release conviction under *Spaulding-Unger*'s second factor, Mr. Woodard again asserts that the relative danger posed by the crimes of failure to report and contempt of court varies depending on the facts in a case. *Id.*

Finally, he argues that *Spaulding-Unger's* final consideration, the risk of recidivism, is similar because "[i]n both scenarios, the person necessarily has ignored or violated a court order." *Id.* at 7. In sum, Mr. Woodard contends that there is not "a substantive difference" between failure to report and contempt of court. *Id.*

## B.  The Government's Memorandum

### 1.  Violation of Condition of Release

Regarding Mr. Woodard's conviction for violation of condition of release, the Government argues that the Court should adhere to its decision in *United States v. Daigle*, 564 F. Supp. 2d 50 (D. Me. 2008), and conclude that violation of condition of

release and contempt of court are not "sufficiently similar" to apply U.S.S.G. § 4A1.2(c)(1). *Gov't's Mem.* at 1-2.

### 2. Failure to Report

Next, with respect to Mr. Woodard's conviction for failure to report, the Government argues that the elements for that offense and contempt of court are distinct. *Id.* at 3. First, the Government points out that criminal contempt of court has a mens rea requirement whereas the failure to report statute does not expressly contain such an element. *Id.* Citing *State v. Fowler*, 676 A.2d 43, 45 n.3 (Me. 1996), the Government contends that although Mr. Woodard points to 17-A M.R.S.A. § 34(4) as a basis to imply mens rea into the failure to report statute, because Mr. Woodard was convicted under 14-A M.R.S.A. § 1091-A of the Maine Bail Code instead of the Maine Criminal Code, this argument cannot stand. *Gov't's Mem.* at 4. Instead, the Government asserts that the failure to report statute's inclusion in the Maine Bail Code with other strict liability offenses—such as violation of condition of release and failure to appear—demonstrates the Maine Legislature's intention that failure to report not contain a mens rea element. *Id.* at 4-5. The Government supports this argument with legislative history showing that the failure to report statute was modeled after failure to appear. *Id.* at 4. Given this distinction, the Government argues that the Court should not apply U.S.S.G. § 4A1.2(c)(1) to Mr. Woodard's failure to report conviction. *Id.*

Further, the Government argues that the risks associated with failure to report are more definite than those associated with violation of condition of release.

*Id.* at 5. Specifically, the Government asserts, "[a] convicted, sentenced defendant who refuses to serve his sentence presents a judicially recognized, yet unresolved problem for law enforcement . . . [and] an offender who chooses not to serve his sentence may be inclined to take extreme steps to avoid apprehension and service of his sentence." *Id.* The Government also emphasizes the difference between a person charged with the crime who fails to appear in Court and a person who is convicted of a crime and fails to appear, and argues that the latter is more dangerous. *Id.* at 6. Thus, the Government insists that the dangers associated with failure to report are greater than those associated with contempt of court. *Id.*

Finally, the Government admits that *Spaulding-Unger*'s third factor, the risk of recidivism, is difficult to assess in this case and would require the Court to speculate. *Id.* Nevertheless, to underscore Mr. Woodard's risk of recidivism, the Government calls the Court's attention to the fact that Mr. Woodard refused to pay his fine on his failure to report conviction after he had been at large for over a year. *Id.*

In conclusion, the Government asks the Court to deny application of U.S.S.G. § 4A1.2(c)(1) to Mr. Woodard's criminal history computation because the elements of his disputed convictions and contempt of court are not the same.[2] *Id.*

## III. DISCUSSION

### A. Overview of Criminal History Computations

---

[2] The Government references Mr. Woodard's "drug quantity objection" in its Sentencing Memorandum, yet the Court cannot locate this objection within Mr. Woodard's Sentencing Memorandum. *Gov't's Mem.* at 6; *Def.'s Mem.* In any event, the Court takes notice of the Government's request to schedule Mr. Woodard's sentencing for a three hour period. *Gov't's Mem.* at 6.

To determine the proper criminal history category for sentencing, the Probation Office compiles a list of the defendant's criminal convictions in accordance with U.S.S.G. § 4A1.2(e) and recommends the assessment of points for each countable conviction—ranging from one to three points. U.S.S.G. § 4A1.1. Sentences for all felony convictions are counted. *Id.* § 4A1.2(c)(1). Sentences for misdemeanor convictions are generally counted; however, the Guidelines contain examples of crimes excluded from the calculation, such as hitchhiking and vagrancy. *Id.* § 4A1.2(c)(2); *see United States v. Matos*, 611 F.3d 31, 40-41 (1st Cir. 2010) (describing provision). The Guidelines also list examples of crimes, such as gambling and non-support, which may be excluded from the calculation depending on the sentence. U.S.S.G. § 4A1.2(c)(1).

Mr. Woodard argues that his two convictions for violating a condition of release and failing to report should not be assigned criminal history points because under U.S.S.G. § 4A1.2(c)(1), they are "similar to" contempt of court. *Def.'s Mem.* at 5, 7. Contempt of court is listed under U.S.S.G. § 4A1.2(c)(1) as a prior offense generally not counted in a defendant's criminal history computation. *See* U.S.S.G. § 4A1.2(c)(1). In response, citing *United States v. Daigle*, the Government argues that because the crimes do not contain the same elements, namely mens rea, points must be assigned to these convictions. *Gov't Mem.* at 1-5.

Under First Circuit precedent, federal not state law determines "whether an offense runs afoul of section 4A1.2(c)(2)." *United States v. Unger*, 915 F.2d 759, 762-63 (1st Cir. 1990); *see Spaulding*, 339 F.3d 20, 22 n.1 (1st Cir. 2003) (extending the

*Unger* analysis to cases dealing with § 4A1.2(a)(1)). In *Unger*, the First Circuit concluded that to ascertain the scope of § 4A1.2(c)(2), courts should "look to the substance of the underlying state offense in order to determine whether it falls within the prescription." 915 F.2d 759, 763 (1st Cir. 1990). Thus, in *Unger*, the First Circuit examined the "conduct underlying defendant's three juvenile adjudications," which consisted of breaking and entering, receiving stolen goods, and assault and battery, and concluded that his actual conduct was distinct from a status offense, such as hitchhiking, truancy, loitering or vagrancy. *Id.*

Later, in *Spaulding*, the First Circuit expanded *Unger's* analysis to encompass cases involving § 4A1.2(c)(1) and observed that "[d]etermining whether two crimes are similar necessarily requires us to begin by looking to the elements of the two offenses." *Spaulding*, 339 F.3d at 22. The *Spaulding* Court held that the elements of the crimes do not need to be identical but that "two crimes cannot be termed 'similar' if they involve wholly different elements." *Id.* The First Circuit also concluded that, when analyzing the similarity of two offenses, courts should also consider the "relative danger posed by each crime and the risk of recidivism displayed by each crime." *Id.*

Under *Spaulding-Unger*, the Court considers: (1) the elements of Mr. Woodard's two convictions and contempt of court to determine if they are "similar"; (2) the relative danger posed by each crime; and (3) each crime's risk of recidivism. *Id.*; *Daigle*, 564 F. Supp. 2d at 53-55, 60 (assessing similarities according to all three

factors but finding that violation of condition of release was distinct from contempt of court primarily because it did not include a mens rea element).

## B. *Shepard* and the "Similar To" Analysis

It is not entirely clear whether in making these comparisons the Court must apply the second of the First Circuit's "two-tiered categorical approach" described in *Cadieux* for determining whether prior felonies are counted for purposes of the Armed Career Criminal Act. 500 F.3d 37, 42 (1st Cir. 2007). This approach would require the Court to first compare the elements of the state and generic offenses only based on the fact of conviction and the definition of the statutory offense, and then if the state definition is broader than the generic offense, examine the record of conviction. *Id.*; *Miller*, 478 F.3d at 51; *see Daigle*, 564 F. Supp. 2d at 57. The first part of the two-tiered analysis is straightforward; however, the second part of the analysis significantly limits the documents that a court may use in determining the conduct comprising the offense. In *Shepard v. United States*, 544 U.S. 13 (2005), the Supreme Court explained that the second part of this two-tiered analysis—the record of conviction—must be limited to certain court documents and rejected the use of a police report for purposes of judicial fact-finding. *Id.* at 25-26.

After *Shepard*, the First Circuit has continued to examine the conduct underlying the offense in assessing whether a crime should be accorded a criminal history point under U.S.S.G. § 4A1.2(c)(1). In *United States v. Donath*, 616 F.3d 80 (1st Cir. 2010), for example, the First Circuit noted that the district court had considered the "underlying conduct" behind the challenged offenses, but it is not

clear whether the district court limited its examination of the underlying conduct to *Shepard* documents. *Id.* at 83; *see United States v. May*, 343 F.3d 1, 10 (1st Cir. 2003). Similarly, in *United States v. McKenzie*, 539 F.3d 15 (1st Cir. 2008), the First Circuit discussed "the circumstances surrounding" the defendant's prior conviction but did not indicate whether the source of that information met *Shepard* standards. *Id.* at 18.

It does not matter here. Mr. Woodard attached the docket sheets from the Maine District Courts for both the violation of condition of release and failure to report convictions to his sentencing memorandum. *Def.'s Mem.* Attach. 1-2. The conduct underlying his convictions is also set forth in the PSR and for purposes of his argument, Mr. Woodard recites the contents of the PSR's report of his underlying conduct in his memorandum. *Def.'s Mem.* at 1 n.1. The docket sheets constitute the "judicial record" of the convictions under *Shepard*, 544 U.S. at 26, and in any event, Mr. Woodard has adopted the PSR's description for purposes of this argument.

## C. The *Spaulding-Unger* Analysis

### 1. Violation of Condition of Release and Contempt of Court

*Spaulding-Unger* requires the Court to compare the elements of violation of condition of release with contempt of court. Under 15 M.R.S.A. § 1092, a person violates a condition of release in Maine if that person was "granted preconviction or postconviction bail" and later "violate[d] a condition of release." *Id.* § 1092(1). Defendants are afforded an affirmative defense to avoid a conviction under this

statute if they can show "the violation resulted from just cause." *Id.* § 1092(2). The statute classifies violation of condition of release as "a strict liability crime defined in Title 17-A, section 34, subsection 4-A" of the Maine Criminal Code, which states that strict liability "does not include a culpable mental state element with respect to any of the elements of the crime." *Id.* § 1092(3); 17-A M.R.S. § 34(4).

Contempt of court is federally criminalized under 18 U.S.C. § 401, which defines the "power of [the] court" to "punish by fine or imprisonment, at its discretion, such contempt of its authority."[3] *Id.* With this authority, federal courts may punish: "(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice . . . [and] (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." *Id.* § 401(1), (3). Criminal contempt requires a culpable state of mind. *See United States v. Mourad*, 289 F.3d 174, 180 (1st Cir. 2002) ("To convict a defendant of criminal contempt under 18 U.S.C. § 401(3), the government must prove beyond a reasonable doubt that the defendant willfully violated a lawful order of reasonable specificity"); *United States v. Michaud*, 928 F.2d 13, 15 (1st Cir. 1991) (listing the elements of criminal contempt as "(1) . . . a lawful court order of reasonable specificity, (2) the appellant violated it, and (3) the violation was willful"); *Gordon v. United States*, 592 F.2d 1215, 1218 n.3 (concluding in the context of a criminal contempt appeal, "[n]or do we have any trouble finding adequate mens rea to obstruct; this was an open declaration of war on the court's authority"); *United States v. Burstyn*, 878 F.2d

---

[3]     Procedurally, contempt of court is governed by Rule 42 which provides that "any person who commits criminal contempt may be punished for that contempt after prosecution on notice . . . [and] is entitled to a jury trial in any case in which federal law so provides . . . ." Fed. R. Civ. P. 42.

1322, 1324 (11th Cir. 1989); *United States v. Delahanty*, 488 F.2d 396, 398-99 (6th Cir. 1973); *United States v. Seale*, 461 F.2d 345, 367-68 (7th Cir. 1972).

Here, because violation of condition of release is a strict liability crime void of a mens rea element and federal contempt of court contains a mens rea element, under *Spaulding*, these two crimes "cannot be termed 'similar.'" 339 F.3d at 22. This conclusion is in line with the Court's past decision. In *Daigle*, the Court determined that a conviction for violation of condition of release was not "similar to" contempt of court primarily because of the mens rea element discrepancy. 564 F. Supp. 2d at 60-61. Although Mr. Woodard argues that the "just cause" affirmative defense to a violation of condition of release charge necessarily implies some kind of mens rea requirement, the Court recognizes the importance of the Legislature's decision not to require a mens rea element by making violation of condition of release a strict liability crime. *See id.* ("[T]he fact that the Legislature does not require culpability for a violation of a condition of release evidences the seriousness with which it views such a crime").

As in *Daigle*, the penalties for the two crimes are distinct. *Id.* at 59. A violation of condition of release offense is generally punishable as a Class E crime;[4] whereas, the penalty for criminal contempt of court is left to the discretion of the court. *Id.; see Frank v. United States*, 395 U.S. 147, 149 (1969) (stating that

---

[4]    The statute provides that if "the underlying crime was punishable by a maximum period of imprisonment of one year or more and the condition of release violated is one specified in section 1026, subsection 3, paragraph A, subparagraph (5), (8), (10-A), or (13)" it will constitute a Class C crime. 15 M.R.S.A. § 1092(1) (2011). Here, on November 16, 2004, Mr. Woodard was charged with violating conditions of release, a Class E crime. *Def.'s Mem.* Attach. 1.

"Congress . . . has authorized courts to impose penalties [for criminal contempt] but has not placed any specific limits on their discretion").

Applying the second *Spaulding-Unger* factor, the Court concludes that the "relative danger posed by each crime" varies. *Spaulding*, 339 F.3d at 22. There is a broad range of potential risks associated with a defendant's violation of a condition of release. As in *Spaulding*, a defendant could violate a protection order and potentially endanger a person's life.[5] *Id.* However, a violation of a condition of release could involve more benign conduct, such as Mr. Woodard's operation of a vehicle without a valid license, which poses relatively less danger to the community at large.[6] Similarly, "[i]t is difficult to specify the risks attendant to contempt of court, because of the range of conduct the crime potentially includes." *Daigle*, 564 F. Supp. 2d at 60 (concluding that "the risks inherent in conduct amounting to contempt in the presence of the court are obvious and significant . . . [and] an individual's willingness to intentionally violate a court order outside the presence of the court presents a separate set of risks"). The relative danger posed by each crime necessarily depends on the facts.

---

[5] The nature of Mr. Woodard's violation of a condition of release is markedly different from those described in *Spaulding*, 339 F.3d at 22, *United States v. Perkins*, 421 F. Supp. 2d 209, 212 (D. Me. 2006), *Daigle*, 564 F. Supp. 2d at 59, where the defendants violated protection orders. Mr. Woodard drove a vehicle without a license while on bail for Operating After Suspension. *PSR* ¶ 32. In general, violating a protection order creates a greater risk than operating a motor vehicle after suspension.

[6] Mr. Woodard argues that because he was charged with violating a condition of release on October 13, 2004, the same offense date as alleged in Count I, "it is reasonable to infer that the violation of condition of release was that he operated a motor vehicle not being duly licensed." *Def.'s Mem.* at 3, Attach. 1; *see PSR* ¶ 32. He also correctly notes that "[t]he dangers associated with this VCR [violation of condition of release] conduct are not significant in and of themselves. Assessment of the danger imposed by a generic VCR is difficult to assess because accompanying behavior can be varied . . . [i]t is how the operation of the vehicle occurred that likely defines the danger, which again, can be varied." *Def.'s Mem.* at 4.

Here, Mr. Woodard's actual conduct leading to his violation of a condition of his release is limited to operating a motor vehicle after revocation; there is no suggestion of any other contemporaneous criminal conduct, such as speeding, operating under the influence, or failure to stop. At the same time, although conditions of release may prohibit otherwise legal conduct, such as use of alcohol, in this case, Mr. Woodard's violation of a condition of his release was the commission of another crime, operating a motor vehicle after revocation. Furthermore, the penalty that the Maine District Court imposed—a jail term of seven days and a $500 fine—confirms that the state district judge concluded that Mr. Woodard's actual conduct was sufficiently egregious to require the imposition of a jail term and a relatively significant fine. *Def.'s Mem.* Attach. 2.

Similarly, the final *Spaulding-Unger* factor—the risk of recidivism—is uncertain given the facts in this case. *Spaulding*, 339 F.3d at 22. "[T]he unifying disturbing factor in both contempt of court and violation of conditions of release is that a perpetrator necessarily has ignored or affronted the administration of justice." *Daigle*, 564 F. Supp. 2d at 60. Under the categorical approach outlined in *Cadieux*, whether defendants who violate conditions of release by operating after revocation repeat their offenses more often than individuals who engage in contempt of court is speculative. 500 F.3d at 42-43 (courts must "'consider whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of th[e] particular offender'") (quoting *James v. United States*, 550 U.S. 192, 202 (2007)); *see Daigle*,

564 F. Supp. 2d at 60. As noted, Mr. Woodard's actual conduct in committing the violation is relatively benign. The application of the second and third *Spaulding-Unger* factors slightly favors Mr. Woodard's view that his violation of a condition of release is less serious than contempt of court. Nevertheless, the Court follows *Spaulding* and *Daigle* and concludes that criminal contempt's mens rea element renders the two crimes distinct. *See Daigle*, 564 F. Supp. 2d at 60 ("Most importantly, the mens rea for the two crimes is different - - a condition of release violation is a strict liability crime, while contempt requires a showing of culpability").

This conclusion—that the crimes are different in substance—is supported by the fact that "a violation of a condition of release may only occur in the context of criminal proceedings, when a person who already stands accused of a crime fails to follow the court's instructions on release; meanwhile, contempt may be applied in a variety of circumstances, both civil and criminal." *Id.* at 61. Because violation of condition of release and criminal contempt of court are not "similar to" one another, Mr. Woodard's conviction for violation of condition of release is properly assigned one point and counted under U.S.S.G. § 4A1.1(c).

## 2. Failure to Report and Contempt of Court

The Court follows the same analytic path in addressing Mr. Woodard's failure to report conviction. Proceeding with the first *Spaulding-Unger* consideration, the Court compares the elements of failure to report with the elements of contempt of court. A person may be charged with failure to report under 15 M.R.S.A. § 1091-A

of the Maine Bail Code if "a defendant who has been sentenced but granted a stay of execution to report at a specific time . . . fails to report." *Id.* § 1091-A(1). As with violation of condition of release, the statute provides a defendant with an affirmative defense "that the failure to appear resulted from just cause." *Id.* Unlike violation of condition of release, the statute governing failure to report does not specify a required mental state or that it is a strict liability crime. *Id.* Mr. Woodard argues that according to 17-A M.R.S.A. § 34(1) and the Maine Legislature's failure to specify a mental state or establish strict liability for the crime, a criminal intent requirement must be presumed. *Def.'s Mem.* at 6. Maine law provides that "a person is not guilty of a crime unless that person acted intentionally, knowingly, recklessly or negligently, as the law defining the crime specifies . . . [and] that [a] 'strict liability crime' [ ] [is] a crime that . . . does not include a culpable mental state element." *Id.* § 34(1), (4).

In response, the Government first points out that the statute for failure to report is not found within the Maine Criminal Code but within the Maine Bail Code. *Gov't's Mem.* at 3-4. This argument is unpersuasive because the statute governing violation of condition of release is located in the Maine Bail Code and expressly refers to 17-A M.R.S. § 34(4) to define strict liability. 15 M.R.S.A. § 1092(3).

Next, citing *State v. Fowler*, 676 A.2d 43 (Me. 1996), the Government contends that when the Legislature makes a conscious choice not to include a

culpable mental state, mens rea is not an element of the offense.[7] *Gov't's Mem.* at 4 (citing *Fowler*, 676 A.2d at 45); *see also Seamen's Club*, 1997 ME 70, ¶ 11-12, 691 A.2d 1248, 1252 (stating that "[p]roof of intent is not required when it is not expressly set forth in the governing statute and there is a legislative intent to impose liability without proof of a culpable state of mind"). The Government points to legislative history to argue that failure to report was modeled after failure to appear, a strict liability crime in the Maine Bail Code. 15 M.R.S.A. § 1091; COMMITTEE ON CRIMINAL JUSTICE, COMMITTEE AMENDMENT, S.P. 430-1198, 117th Sess., at 2 (Me. 1995) [hereinafter COMMITTEE AMENDMENT].

In Maine, the failure to appear when admitted to pre-conviction or post-conviction bail has become a strict liability crime, the violation of which is either a Class E or Class C crime. 15 M.R.S. § 1091. However, before 1995, if a sentencing court stayed execution of the sentence and did not place the defendant on bail, there was no statute that criminalized a defendant's failure to report as directed. In 1995, at the urging of the Department of Corrections, the Maine Legislature criminalized the failure to report to a corrections facility as ordered after a stay of execution. *Gov't's Ex. 2 Legislative History* at 7 (ECF No. 34) (*Legislative History*); 1995 Public Law, c. 456, codified as 15 M.R.S. § 1091-A. The statement of fact accompanying the legislation reads:

---

[7] Section 34 of title 17-A of the Maine Statutes provides that legislative intent determines whether a mental state can be read into a criminal statute that is silent as to culpability. *Id.* § 34(4) ("Unless otherwise expressly provided, a culpable mental state need not be proved with respect to: . . . F. Any criminal statute as to which a legislative intent to impose liability without a culpable state of mind as to any of the elements of the crime otherwise appears").

> [This amendment] amends the Maine Bail Code by criminalizing a defendant's failure to report to the defendant's ordered place of imprisonment after the defendant has been granted a stay of execution. The amendment is consistent with law that criminalizes a defendant's failure to appear.

*Id.* at 11, 21.

When section 1091-A was enacted, sections 1091 and 1091-A were substantially the same, although the statutes used a different format. *See* COMMITTEE AMENDMENT. However, in 2004, the Maine Legislature amended section 1091 to track the format of section 1091-A and it added subsection 3, which provides: "STRICT LIABILITY. Violation of this section is a strict liability crime as defined in Title 17-A, section 34, subsection 4-A." 15 M.R.S.A. § 1091. Although the Legislature changed section 1091, it left section 1091-A unaltered. *Compare* 15 M.R.S.A. § 1091, *with* 15 M.R.S.A. § 1091-A.

Even though an argument could be made that the Maine Legislature deliberately concluded that failure to appear should be a strict liability crime and failure to report should not, the more logical conclusion is that failure to report—like its statutory companion, failure to appear—is a strict liability crime under Maine law. The two crimes are nearly identical, appear in the same title and chapter of the Maine statutes, and were enacted with the same public policy purposes in mind, namely to require criminal defendants to appear and report as ordered. The Court cannot conceive of a good reason for imposing different mens rea standards on these twin crimes. Consistent with this legislative history and

with *Fowler* and *Seamen's Club*, the Court concludes that failure to report does not include a mens rea element.

Comparing failure to report with contempt of court, a crime that does contain a mens rea element, under *Spaulding-Unger*, Mr. Woodard's failure to report conviction is not "similar to" contempt of court and does not qualify for application of U.S.S.G. § 4A1.2(c)(1). *See* Part II.C.1. This conclusion is strengthened by the fact that, as with violation of condition of release, these two crimes carry different penalties.[8]

Turning to the second *Spaulding-Unger* consideration, the relative dangers associated with each crime are not clearly ascertainable. The Government correctly notes that with failure to report, "[a] convicted, sentenced defendant who refuses to serve his sentence presents a judicially recognized, yet unresolved problem for law enforcement." *Gov't's Mem*. at 5. The Government further argues that a defendant who fails to report could "take extreme steps to avoid apprehension and service of his sentence" or commit another crime and have an added incentive to flee. *Id*. at 5-6.

Mr. Woodard responds by stating that "it is not the failure to report but the conduct that occurs in lieu of service of the jail sentence for which the person was required to report that defines the level of danger imposed." *Def.'s Mem*. at 6. He

---

[8] 15 M.R.S.A. § 1091-A(1) lists the penalties for failure to report as: "A. A Class E crime if the underlying crime was punishable by a maximum period of imprisonment of less than one year; or B. A Class C crime if the underlying crime was punishable by a maximum period of imprisonment of one year or more." *Id*. Mr. Woodard was charged with a Class E offense. *Def.'s Mem*. Attach 1 at 1. Federal contempt of court is not penalized by a set sentence but is left to the discretion of the Court. *See Frank v. United States*, 395 U.S. at 149.

also underscores that violators of this statute were initially granted stays to self-report and are presumably less dangerous than other convicts. *Id.* These arguments highlight the difficulty in assessing the relative dangers posed by the two crimes, and again, the level of danger ultimately depends on the facts. Although, the Court recognizes that a convicted criminal who fails to report may present a higher risk of danger than a person, presumed innocent, who fails to appear in court and is held in contempt, the Court is unwilling to speculate and conclude that a defendant who engages in one of these crimes presents a higher risk of danger to society than someone who engages in the other.

Again, within the range of conduct for failure to report, there is no suggestion that Mr. Woodard's actual conduct here was particularly egregious. The Maine District Court imposed only a $200 fine for his failure to report, *Def.'s Mem.* Attach. 1, and there is no indication of any untoward additional conduct—he was guilty only of not showing up to serve his sentence after promising to do so.

Applying *Spaulding-Unger*'s third consideration—the risk of recidivism, "the unifying disturbing factor" with these two crimes is that "a perpetrator necessarily has ignored or affronted the administration of justice." *Daigle*, 564 F. Supp. 2d at 60. Again here, the Court declines to speculate whether a defendant who fails to report is more likely than a person who acts in contempt of court to return to criminal activity. Notably, Mr. Woodard concedes that given his convictions for violation of conditions of release and failure to report it appears that he "has some recidivist tendencies." *Def.'s Mot.* at 7. Yet, the Court agrees with Mr. Woodard

that to compare his "recidivist tendencies" with that of a federal contemnor would require the Court to engage in speculation.

Adhering to *Daigle* and the conclusion that failure to report and contempt of court require different levels of intent, the Court assigns one criminal history point to Mr. Woodard's failure to report conviction under U.S.S.G. § 4A1.1(c).

## IV.   CONCLUSION

The Court assigns one criminal history point to each of Tony Woodard's 2004 state of Maine convictions for violation of condition of release and failure to report.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 23rd day of October, 2012